IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| **MICHELLE L. GANUS** as Personal Representative of the Estate of **MICHAEL FISHER GANUS;** | |
| Plaintiff, | |
| v. | Civil Action No.:  1:23-cv-00103-TFM-MU |
| **ALABAMA & GULF COAST RAILWAY, LLC; HARBOR RAIL. SERVICES OF CALIFORNIA, INC. FICTITIOUS DEFENDANTS A – C** being those Individuals, corporations, companies, or other entities who were servants or employees of ALABAMA & GULF COAST RAILWAY, and who were Responsible for overseeing, supervising, Managing, or otherwise controlling Michael Fisher Ganus at the time of the Underlying incident which is the basis of This lawsuit; Fictitious Defendants D-Z Are those individuals, corporations, Companies, or other entities who were servants or employees of ALABAMA & GULF COAST RAILWAY, whose acts or omissions Caused or contributed to the death of Michael Fisher Ganus; | PLAINTIFF REQUESTS TRIAL BY JURY |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff, MICHELLE L. GANUS as Personal representative of the estate of MICHAEL FISHER GANUS, who alleges the following facts, asserts the following causes of action, and claims the following damages against the Defendants, ALABAMA & GULF COAST RAILWAY, LLC;  HARBOR RAIL SERVICES OF CALIFORNIA, INC.; FICTITIOUS

DEFENDANTS A – C being those as of yet unascertained individuals, corporations, companies or other entities who were servants or employees of ALABAMA & GULF COAST RAILWAY who were responsible for overseeing, supervising, managing, or otherwise controlling Michael Fisher Ganus at the time of the underlying incident which is the basis of this lawsuit; FICTITIOUS DEFENDANTS D – Z being those as of yet unascertained individuals, corporations, companies or other entities who were servants or employees of ALABAMA & GULF COAST RAILWAY whose acts or omissions caused or contributed to the death of Michael Fisher Ganus.

## PARTIES

1.  Plaintiff MICHELLE L. GANUS (hereinafter may be referred to as "Plaintiff") is over 19 years old and resides in Mobile County, Alabama. MICHELLE L. GANUS is the mother of Michael Fisher Ganus and was appointed personal representative of the Estate of Michael Fisher Ganus (hereinafter "Ganus"), who was a resident of Washington County, Alabama, at the time of his death.

2.  Defendant Alabama & Gulf Coast Railway, LLC, (hereinafter "AGR") is a corporation organized under the laws of the State of Delaware that has its principal place of business and corporate headquarters in Jacksonville, Florida. AGR is a common carrier by railroad engaged in interstate commerce and the transportation of freight for hire, including locations in Mobile County, Alabama.

3.  Defendant Harbor Rail Services of California, Inc. (hereinafter "Harbor Rail Services") is a corporation organized under the laws of the State of California that has its principal place of business and corporate headquarters in Pasadena, California. Harbor Rail Services is a common carrier by railroad engaged in interstate commerce and the transportation of freight for hire, including locations in Mobile County, Alabama.

4. FICTITIOUS DEFENDANTS A – C are those as of yet unascertained individuals, corporations, companies or other entities who were servants or employees of AGR who were responsible for overseeing, supervising, managing, or otherwise controlling Michael Fisher Ganus at the time of the underlying incident which is the basis of this lawsuit

5. FICTITIOUS DEFENDANTS D – Z are those as of yet unascertained individuals, corporations, companies or other entities who were servants or employees of AGR whose acts or omissions caused or contributed to the death of Michael Fisher Ganus.

## JURISDICTION AND VENUE

6. This Court has concurrent jurisdiction over suits filed under the Federal Employment and Labor Act. 45 U.S.C. § 56.

7. This is the correct venue, as the underlying accident which is the basis of this lawsuit occurred in Mobile County, Alabama.

## FACTS

8. On February 25, 2020, Ganus was a servant and/or employee of Harbor Rail Services and AGR. At that time, Harbor Rail Services was hired by AGR to provide specialized services for railroad operations, including, but not limited to servicing, routine repairing, and maintaining rail cars owned and operated by AGR and various third parties.

9. Ganus worked on a crew that repaired AGR's rail cars and loaded/unloaded cross ties at AGR's direction. At all times relevant, AGR was the controlling employer, and it directed, supervised, ordered, or otherwise controlled Ganus in the performance of his duties.

10. As a result, Ganus was a borrowed servant of AGR, a dual servant of AGR and/or a sub servant of Harbor Rail Services, which was a servant of AGR.

11. On February 25, 2020, Ganus was under the direction and/or supervision of AGR, and was part of a groundcrew directed to operate a lift and unload crossties, and to repair a rail car's truck set at or near 701 Telegraph Road, Mobile, Alabama 36610.[1]

12. To perform the tasks assigned by AGR, the groundcrew had to use a powered industrial truck with a heavy forklift boom attachment. The safety chain/hook of the boom attachment needed to be secured using a safety hook with a safety latch (or other securing device) attached back to the safety chain.

13. The aforementioned safety chain/hook of the boom attachment was missing the required safety latch or other securing device (i.e. a safety-locking pin).

14. Furthermore, the forklift boom attachment was not approved for use in conjunction with the industrial truck which was used.

15. During the repairs/servicing, the groundcrew worked at, near, and under the truck with the forklift boom attachment. Due to the missing safety feature, the forklift boom attachment came off the truck and fatally struck Ganus in the chest.

16. Both before and at the time of Ganus's death, AGR and its servant Harbor Rail Services failed to implement adequate training and safety procedures in connection with the use of the industrial truck and boom lift attachment.

17. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that the workplace was safe for its employees, servants and sub-servants of servants.

---

[1] AGR owns and operates the railroad property located at 701 Telegraph Road, Mobile, Alabama 36610. Harbor Rail Services is also involved in operating the railroad, including performing railcar repair services as AGR's exclusive repair agent.

18. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that all equipment and/or machinery used by its employees, servants, and sub-servants of servants were properly maintained and safe.

19. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that all equipment and/or machinery used by its employees, servants, and sub-servants of servants had adequate safety measures.

20. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that all equipment and/or machinery used by its employees, servants, and sub-servants of said servants, was being used for the purposes for which it was designed.

21. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that all employees, servants, and sub servants of servants were adequately trained to use any and all equipment and/or machinery.

22. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that proper safety procedures and policies were in place.

23. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that any modifications or additions made to equipment and/or machinery were adequately designed, installed, added, or otherwise done in a manner which was not likely to cause injury.

24. AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z owed a duty to ensure that they and/or their servants provided

adequate safety training at the jobsite, including the use of the industrial truck with heavy forklift boom attachment.

25.     AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z breached these aforementioned duties.

26.     AGR, HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D - Z breach of these aforementioned duties, is the direct, actual, and proximate cause of Fisher Ganus being struck and killed.

27.     HARBOR RAIL SERVICES, FICTITIOUS DEFENDANTS A – C, AND FICTITIOUS DEFENDANTS D – Z are servants of AGR, who at the time and the place of the underlying incident were working within the line & scope of their employment with AGR.

## COUNT ONE
## FELA NEGLIGENCE CLAIM AGAINST AGR

28.     Plaintiff adopts and re-alleges each preceding paragraph of this Complaint as if fully set forth herein and further alleges:

29.     This claim arises under FELA.

30.     AGR has, at all times material to this complaint, been common carriers and engaged in the business of operating railroads for the transportation of freight for hire in interstate commerce.

31.     At all times material to this complaint, Ganus was a borrowed servant of AGR, a dual servant of AGR, and/or a sub servant of a company (Harbor Rail Services) which was a servant of AGR.

32.     At the time of the accident made the basis of this complaint, Ganus was engaged in part of his duties in connection with his employment by AGR and/or its servant (Harbor Rail Services), and in furtherance of interstate commerce.

33. Ganus was struck and killed as set forth in paragraphs 8 – 16.

34. On the occasion referred to herein, Defendant AGR, FICTITIOUS DEFENDANTS A – C, and FICTITIOUS DEFENDANTS D – Z were negligent as follows, including, but not limited to:

    a. Failure to provide a safe work environment;

    b. Failure to ensure that equipment was properly maintained;

    c. Failure to ensure that employees, servants, and/or sub servants were adequately trained and supervised;

    d. Failure to ensure that proper procedures were in place;

    e. Failure to ensure that equipment/machinery was being used in conjunction with its designed purpose.

    f. Failure to ensure any modifications or additions made to equipment and/or machinery were adequately designed, installed, added, or otherwise done in a manner which was not likely to cause injury.

    g. Other negligent acts and omissions.

35. As an actual and proximate result of Defendants' negligence, Plaintiff experienced intense pain and suffering, mental anguish and distress, and, ultimately, death. Furthermore, Plaintiff's family no longer receives support or services rendered by the decedent.

## COUNT TWO
## FELA NEGLIGENCE CLAIM AGAINST HARBOR RAIL SERVICES

36. Plaintiff adopts and re-alleges each preceding paragraph of this Complaint as if fully set forth herein and further alleges:

37. This claim arises under FELA.

38. Harbor Rail Services has, at all times material to this complaint, been a common carrier and engaged in the business of operating railroads for the transportation of freight for hire in interstate commerce.

39. This claim is being pled in the event that a jury were to believe certain testimony and evidence regarding the alleged nature of Harbor Rail Services' operations at the Mobile job site and their purported relationship to AGR.

40. At the time of the accident made the basis of this complaint, Ganus was engaged in part of his duties in connection with his employment by AGR and/or its servant [Harbor Rail Services], and in furtherance of interstate commerce.

41. The decedent, Michael Fisher Ganus, was an "employee" of both AGR and Harbor Rail Services for purposes of FELA. Michael Fisher Ganus was a borrowed servant of AGR; a dual servant of AGRA and Harbor Rail Services, and/or a servant of Harbor Rail Services which was in turn a servant of AGR.

42. Harbor Rail Services is a "common carrier by rail" subject to FELA.

43. Harbor Rail Services and AGR are highly integrated and mutually dependent companies that together operate the railroad.

44. Harbor Rail Services holds itself out as being AGR's "exclusive repair car agent."

45. On its website, Harbor Rail Services advertises itself as being the railroad's own "car department":



46. Harbor Rail Services also represents to the public that they are "partners" with "other railroads" both "big and small"

47. Harbor Rail Services also publicly refers to themselves as "highly trained railroaders" and claims to "have been in the railroad business for more than three decades."

48. Harbor Rail Services' own CEO admits that Harbor Rail Services" "partner[s] with the railroads to safely deliver the goods."

49. Harbor Rail Services performs the kind of railroad services contemplated by FELA, including repairing and maintaining railcars on the railroad.

50. In fact, Harbor Rail Services' primary objective was to provide supporting rail services for AGR.

51. The railcar repair services provided by Harbor Rail Services at the Mobile job site are required by FRA and AAR regulations.

52. The railcar repair services performed by Harbor Rail Services is also subject to audits by the FRA and ARR and must meet FRA and ARR standards.

53. Under the express terms of the contract between Harbor Rail Services and AGR, Harbor Rail Services is required to follow all FRA regulations.

54. The services provided by Harbor Rail Services, including repairing and maintaining railcars, are necessary and essential to providing railroad services to customers.

55. If the railcar repair services Harbor Rail Services provided at the Mobile jobsite were eliminated, AGR could not fulfill its obligations to its customers much less provide a functional railroad.

56. AGR relies on Harbor Rail Services to safely fulfill its obligations to its customers and provide a functional railroad.

57. By providing necessary and essential services, Harbor Rail Services is part of the total enterprise of the railroad.

58. Harbor Rail Services furthers the operational activities of the railroad by providing railcar repair services and by acting as AGR's exclusive repair agent.

59. Harbor Rail Services' operational tasks, including its railcar repair services and loading/unloading crossties at AGR's direction, go to the very core of the railroad business.

60. By entering into the contract with Harbor Rail Services, AGR effectively outsourced certain essential operational tasks to Harbor Rail Services, which AGR would otherwise have had to perform itself, such as the repair and maintenance of railcars.

61. The services performed by Harbor Rail Services, including repairing and maintaining railcars placed on the railroad, are part of the total rail service contracted for by the public.

62. Harbor Rail Services is directly involved in the railroad operations at AGR's Mobile, Alabama jobsite.

63. For example, Harbor Rail Services is tasked in part with moving and repairing railcars as part of its work at the Mobile jobsite.

64. According to the testimony of Geoffrey Birch,[2] Harbor Rail Services operated the area of the railroad where Michael Fisher Ganus's crew repaired railcars for AGR. Mr. Birch further testified that the railcar repair crews were subject to FRA safety rules and regulations, which were provided by Harbor Rail Services.

65. Furthermore, under its contract with AGR, Harbor Rail Services is tasked with performing "mobile repair services" for AGR which involves the movement of railcars and Harbor Rail Services is compensated by AGR for its "travel expenses."

66. Harbor Rail Services is also directly involved in moving railroad materials (e.g., crossties) at the Mobile jobsite.

67. For instance, on the date of Michael Fisher Ganus' death, Harbor Rail Services was ordered by AGR to unload crossties from an 18-wheeler using the same forklift involved in the subject incident.

68. Harbor Rail Services received remuneration for the rail services it performed on behalf of AGR at the Mobile job site.

69. Harbor Rail Services and AGR share in the revenue generated by Harbor Rail Services for its railcar repair services.

70. Pursuant to the contract between Harbor Rail Services and AGR, Harbor Rail Services charged a set rate for their repair services and then divided the revenue among themselves and AGR.

71. According to Harbor Rail Services' website, this revenue sharing scheme is designed to show how "safety pays":

---

[2] Mr. Birch is the former Corporate Director of Safety, Training, and Compliance for Harbor Rail Services.



72. Ganus was struck and killed as set forth in paragraphs 8 – 16.

73. On the occasion referred to herein, Defendant Harbor Rail Services was negligent as follows, including, but not limited to:

    a. Failure to provide a safe work environment;

    b. Failure to ensure that equipment was properly maintained;

    c. Failure to ensure that employees, servants, and/or sub servants were adequately trained and supervised;

    d. Failure to ensure that proper procedures were in place;

    e. Failure to ensure that equipment/machinery was being used in conjunction with its designed purpose;

    f. Failure to ensure any modifications or additions made to equipment and/or machinery were adequately designed, installed, added, or otherwise done in a manner which was not likely to cause injury; and

    g. Other negligent acts and omissions.

74.   As an actual and proximate result of Harbor Rail Services' negligence, Plaintiff experienced intense pain and suffering, mental anguish and distress, and, ultimately, death. Furthermore, Plaintiff's family no longer receives support or services rendered by the decedent.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and/or separately, for compensatory damages, and/or any other such damage allowed by law in such sum above the minimum jurisdictional limits of the court and as determined by a jury to be just, reasonable, and adequate under the circumstances.

**PLAINTIFF REQUESTS TRIAL BY JURY**

Respectfully submitted this 15th day of July, 2024.

/s/ *Fob H. James, IV*
Fob H. James, IV (JAM043)
FOB JAMES LAW FIRM, LLC
2226 1st Avenue S., Ste 105
Birmingham, Alabama 35233
Phone: 205-407-6015
fob@fobjameslaw.com

James Z. Foster
Alabama Bar No. 1378J02I
Foster Law LLC
3660 Dauphin Street, Ste E
Mobile, AL 36608
Phone: (404) 800-0050
james@foster-law.com

*Counsel for Plaintiff*